## No. 1202.

### PARISH BOARD OF SCHOOL DIRECTORS VS. WM. H. EDRINGTON.

One who purchases at an execution sale the right, title and interest of the defendant in execution, acquires *only* such title as the latter had.

If amongst the property sold there is a lot, which the expropriated owner was possessed as a *lessee*, the adjudicatee would take as such, and be substituted as lessee in his place *pro tanto*.

Prescription *acquirendi causa* cannot be acquired under a title resulting from a lease.

Prior to the passage of the Act of the 3d of April, 1853, notarial titles were not required to be filed and registered in the book of conveyances in the recorder's office.

The right of a proprietor of real property evidenced by the registry of a conveyance thereof in the proper book, and the proper office, in the parish in which it is situated at the time, is not affected by the incorporation of it into a new parish, and no additional registry in the new parish is necessary in order to preserve its effect.

APPEAL from the Eighth District Court, Parish of Madison. *Delony*, J.

*A. L. Slack* for Plaintiff and Appellee:

1. The following articles of the R. C. C. are in point: 3441, 3442, 3445, 3446, 3487, 3488, 3489, 3490, 3556 No. 25.

2. Prescription only attaches to a right when it can be exercised. 2 H. D. 1227, No. 2, Plaintiff's right to reclaim the land never arose until after the lease expired in 1886, consequently this right could only, and never before, be judicially enforced when the right arose or the demand was due. C. P. 1.

3. No one can be debarred by prescription from the exercise of any right to be computed from a time at which the right did not exist. 38 Ann. 529, Cochran vs. Violett; 36 Ann. 412; 32 Ann. 1041.

4. The heirs of a deceased person are seized of his succession at the very instant of his death, and the right of possession that the deceased had continue in them, with all its defects and advantages; the change in the proprietor producing no change in the nature of his possession. Castle vs. Floyd, 38 Ann. 587.

5. Mrs. Edrington acquired by sheriff's sale no greater rights than her husband had to Sec. 6, This rule that a purchaser acquires no more than his vendor's rights, is applicable to all class of sales. 4 L. 120; 10 R. 357; 2 Ann. 143; 4 Ann. 52; 4 Ann. 104; 5 Ann. 67. And a vendee of property sold under a *fi. fa.* acquires no right which did not belong to the debtor. 8 N. S. 336; R. C. C. 2620; C. P. 690, 691. The purchaser at sheriff's sale buys the title, such as it is. 9 R. 206, Fuller vs. Harman. All Mrs. E. could acquire was her husband's interest in this lease, for that was all he owned. See Marcade on Prescription, pp. 95–106.

6. The plaintiff was no party to Mrs. E.'s suit against her husband. R. 127. She only

School Directors vs. Edrington.

acquired such right as her husband had, and as that was only a right to an unexpired lease, plaintiff could not interfere until a cause of action arose at the termination of the lease.

7. A party cannot change the origin and nature of his possession. 2 H. D. 1194, and cases.

8. A lessee's possession is the lessor's, whose title the former cannot dispute. The tenant, having entered as such, cannot change the character of his possession by possessing for himself under a subsequent title. 1 H. D, 800, No. 6; 2 H. D. 1194, No. 7; 2 H. D. 1204 No. 25. See also, 14 Ann. 814, Calmes vs. Duplantier; 14 Ann. 230, Jackson vs. Jones; 30 Ann. 591.

The case of Jackson vs. Jones was a school board case, similar in many respects to the present case, and one in which a prescriptive title to a school section under a lease was pleaded and overruled.

9. A party cannot controvert the title of one under whom he claims. 1 N. S. 577; 4 N. S. 402; 4 Ann. 249.

10. Neither party can attack the title of their common author. 2 L. 213; 8 L. 269; 1 R. 369; 5 Ann. 677.

11. Tenants, whilst retaining possession, cannot deny the title of their landlord, nor set up a title against him acquired during the tenantcy. 95 U. S, 444; 3 Peters, 43; 6 Peters' 369; 92 U. S. 107; Rector vs, Gibbons, 111 U. S, 276. See also, Gerault vs. Zunts, 15 Ann. 684; Johnson vs. Dunbar, 26 Ann. 189; Jackson vs. Jones, 14 Ann. 230.

12. The sale of the property of another is a nullity. R. C. C. 2452; 3 Ann. 326; 1 Ann, 284; 4 Ann. 458; 16 Ann. 251; 27 Ann. 489.

13. The maxim, "*contra non valentem,*" etc., applies. It is sanctioned by our jurisprudence. 36 Ann, 409; 32 Ann. 1041.

14. One must hold the thing in fact and in right as owner. R. C. C. 3487. A title defective in form cannot be the basis of prescription. 38 Ann. 885.

### *Stone & Murphy* for Defendant and Appellant:

In a petitory action, plaintiff must rely upon the strength of his own title. The unauthorized and unsigned entry upon a tract book of the words "selected for schools" opposite the number of a section, is no evidence of title. The objection that this was not the best evidence of the fact sought to be established, and was irrelevant, should have been sustained and this evidence excluded. Being admitted, it proves nothing, except the fact itself, that these two words are there written. Bres vs. Louriere et al., 37 Ann. 736; 9 Ann. 281; 12 Ann. 177.

The School Board is not sovereign on its rights of property; prescription runs against every one except the State and United States. 12 Ann. 151. Therefore, if title ever was in the School Board, defendant can plead prescription in bar of plaintiffs' action.

When the sheriff conveys all the right, title and interest of defendant in execution, he conveys the property itself. 13 Ann. 335.

The rule, *contra non valentem agere non currit prescriptio,* cannot be invoked in favor of plaintiff where defendant pleads prescription *acquirendi causa.* Reynolds vs. Batson, 11 Ann. 729.

A purchaser from a lessee may prescribe for the ownership. C. C. 3513; 14 Ann. 230.

A purchaser in good faith prescribes in ten years, no matter how defective the title of his vendee. C. C. 3451; 3484; 38 Ann. 211. A possessor cannot be deprived of the right of pleading prescription; because by inquiry and careful examination he might discover that his vendor had no title. 38 Ann. 885.

A purchaser at a judicial sale, without notice of defects, is in good faith and can prescribe. 38 Ann. 770.

The opinion of the Court was delivered by

WATKINS, J.   In this, a petitory action, the Parish Board of School Directors sue for the recovery of about one hundred and sixty acres of valuable land, known as section six, of township eighteen north, of range fourteen east.

The averment is that it belongs to petitioner, "said tract having been designated under the Act of Congress of the United States as school lands, and is so specified on the abstract book of entries of said parish, made by the register of lands," and that same is located on what is familiarly known as "Terrapin Neck," and embraced in a plantation which is cultivated by the defendant, who resides in the State of Mississippi.

The further averment is that, on the 5th of July, 1836, this land was leased by the Trustees of the Public School Funds for ward one, of the *then* parish of Carroll, wherein the same was situated, to H. P. Morancy, for a term of fifty years; and that the present defendant acquired by mesne conveyances from Morancy.

That this title of defendant was vicious and defective, and on which no right by prescription could be founded; and that he was a mere naked trespasser, without color of right as owner.

The prayer is that the directors be recognized as owner, and placed in possession.

The defense is substantially

*First.*   That plaintiff has not disclosed title in itself.

*Second.*   Prescription of ten years.

I.

The following are the salient facts of the case, viz:

On the 5th of January, 1837, the school trustees of ward one of Carroll parish, in pursuance of an act of the Legislature relating to the disposition of school lands therein situated, entered into a notarial act authenticating a lease which had been made on the 18th of July 1835, at public auction, and whereof H. P. Morancy became the lessee, for a term of fifty years, of the land involved in this suit.   This act was duly recorded on the second of February following.

On the 16th of June, 1845, Morancy conveyed by notarial act to William H. Edrington, the father of the defendant, a large tract of land, embracing the property in suit.   This act contains the following recital, viz:

"It is understood that the said Morancy does not sell lot number six to the said Edrington in fee simple, nor warrant the title to the same, but simply transfers to said Edrington all the right, title and interest

*only* that he acquired to a lease for fifty years, dating from the year 1837 or 1836."

This deed was recorded in the notary's book of notarial records, on the 1st of August, 1845, in the parish of *Carroll.*

An abstract of all the lands which had been sold or located within the limits of the parish of *Madison* was made, and duly certified by the register of the land office at Monroe, La., on the 19th of April, 1852, from which it appears that the land in dispute is entered and designated, in the column of "purchasers' names," as having been "selected for schools."

This abstract is found in the original "Abstract of Sales" book, on file in the office of the recorder of that parish. It is an exemplification of the records of the United States Land Office.

On the 4th of April, 1868, the sheriff of the parish of Madison, under an execution issued under a judgment in the suit entitled Eliza M. Edrington vs. W. H. Edrington, her husband, No. 446, passed a title to the plaintiff in the writ, for the said plantation which the defendant in execution had acquired, as above recited, from Morancy.

This deed, in terms, conveyed to the purchaser, her heirs and assigns, "all the right, title and interest of the said William H. Edrington." *only,* in said property. This deed was duly and seasonably recorded.

Mrs. Eliza M. Edrington died a few years subsequently, possessed of this title, and the defendant and his brother, as the only heirs, accepted her succession unconditionally. The defendant afterwards acquired his brother's interest. His title was, a few years later, expropriated for delinquent taxes, but it was redeemed.

II.

In our opinion the effect of the execution sale to Mrs. Eliza M. Edrington was to convey to her just the same title that her husband, W. H. Edrington, possessed; and it was a fee simple to all the plantation, except section six, and only his rights of lease to that for the remainder of the fifty years. That deed did not convey, or purport to convey, to the purchaser an *adverse* right to that of the defendant in execution, as tenant of the sixth section, as school lands.

The effect of her purchase was just the same as that of Edrington from Morancy, to substitute her in his place in the contract of lease.

Such being the character of her contract, and possession at the commencement, it could not be thereafter changed, by herself or her heirs, to the prejudice of his lessor. Such a title is not the "just title" that is mentioned in Revised Civil Code, 3848, *et seq.*

Article 3485 declares that "prescription cannot be acquired under a title resulting from a lease, or loan, because these contracts do not transfer the *ownership* of the property."

It is therefore clear that the term of prescription in favor of the defendant—if at all—commenced only at the expiration of the Morancy lease, on the 18th of July, 1885.

### III

A question is raised—as though it were an important one in this case—in regard to the registry of the title of W. H. Edrington from Morancy.

On the 1st of August, 1845, when that deed was put to record in the record book kept by the notary passing the act, there was no law which required it to be deposited, or recorded elsewhere. For the first time, the act of April 23, 1853, made it the duty of notaries in the *country* parishes "to deposit in the office of the parish recorders * * the original of all acts passed before them."

This act further provides that "said acts, when thus deposited in the office of the parish recorder, shall form a part of the archives of the same and shall immediately be recorded by him," etc.

*Vide* Article 2247 of Fuqua's Civil Code, and statute of 22d of April, 1853, No. 151, following.

Defendant's counsel insists, in his argument presented in brief, that because the lease of Morancy and his deed to Edrington were not recorded in the parish of *Madison*, within the territorial limits of which the property *now* is, same conveyed no notice to Mrs. Eliza M. Edrington, their ancestor, and hence the defendant must be considered to have purchased an *adverse* title.

This precise question was decided just the other way in Hayden vs. Nutt, 4 Ann, 65. The Court says: "This undivided interest was bought by Nutt from Dawson in 1835. * * This deed was recorded in the mortgage book in the parish of Carroll, where the land lay, in 1835. The parish of Madison, subsequently created, comprised these lands, etc."

Again, at p. 72: "We do not think that the right acquired by the inscription of this mortgage in the parish of Carroll was affected by the subsequent establishment of the parish of Madison, which embraced the lands mortgaged."

While that decision deals with the question of the registry of a mortgage, certainly no more onerous conditions could be imposed, in respect to the registry of conveyances.

This same principle was maintained in Ellison vs. Iler, 22 Ann. 470,

with reference to the effect of a mortgage which had been regularly inscribed in the parish of Franklin against real estate afterwards incorporated into the new parish of Richland.

That is a sound principle of law.

Otherwise the Legislature, by the incorporation of property into a new parish, could with impunity destroy the rank of mortgages, and impair the obligation of contracts, at will.

We think the case was correctly decided in the court below.

Judgment affirmed.